UNIVERSAL COMMUNICATION SYSTEMS, INC.; MICHAEL J. ZWEBNER, Plaintiffs, Appellants,

v.

LYCOS, INC., d/b/a Lycos Network; Terra Networks, S.A.; Roberto Villasenor, Jr., a/k/a the-worm06; John Doe # 2, a/k/a no-insiders; Roberto Villasenor, Jr., a/k/a the-worm06A; John Doe # 4, a/k/a 65175R; John Doe # 5, a/k/a Henry–Johnson123; John Doe # 6, a/k/a quondo1; John Doe # 7, a/k/a Tobias95; John Doe # 8, a/k/a CrawleySmith, Defendants, Appellees.

Robert H. Cooper; Andrew Cunningham; Does 1 Through 8; Omar Ghaffar, Third–Party Defendants.

No. 06–1826.

United States Court of Appeals, First Circuit.

Heard Nov. 7, 2006.

Decided Feb. 23, 2007.

John H. Faro, with whom Faro & Associates was on brief, for appellants.

Daniel J. Cloherty, with whom David A. Bunis, Rachel Zoob–Hill, and Dwyer & Collora, LLP were on brief, for appellee Lycos, Inc.

Thomas G. Rohback, with whom James J. Reardon, Jr. and LeBoeuf, Lamb, Greene & MacRae LLP were on brief, for appellee Terra Networks, S.A.

Before BOUDIN, Chief Judge, SELYA and LYNCH, Circuit Judges.

LYNCH, Circuit Judge.

Plaintiffs Universal Communication Systems, Inc. and its chief executive officer,

Michael J. Zwebner, (collectively, "UCS") brought suit, objecting to a series of allegedly false and defamatory postings made under pseudonymous screen names on an Internet message board operated by Lycos, Inc. UCS identified two of the screen names as having been registered to Roberto Villasenor, Jr. UCS sued not only Villasenor and the other posters of messages, as John Does, but also Lycos and Terra Networks, S.A., Lycos's corporate parent at the time of the postings in question.

In Section 230 of the Communications Decency Act (CDA), 47 U.S.C. § 230, Congress has granted broad immunity to entities, such as Lycos, that facilitate the speech of others on the Internet. Whatever the limits of that immunity, it is clear that Lycos's activities in this case fall squarely within those that Congress intended to immunize. UCS attempted to plead around this Section 230 statutory immunity by asserting that Lycos did not qualify for immunity and that UCS's claims fell within certain exceptions to that immunity. The district court rejected these arguments and dismissed the claims against Lycos and Terra Networks for failure to state a claim. We agree and affirm the dismissals, joining the other courts that have uniformly given effect to Section 230 in similar circumstances.

As for the claims against the individuals who posted, UCS alleged violations of federal and state securities laws, but made only conclusory allegations that the postings at issue were in connection with a scheme involving UCS stock. It thus failed to meet the particularity requirement for pleading fraud under Federal Rule of Civil Procedure 9(b). In the absence of any substantial allegations on this point, we affirm the district court's dismissal of those claims.

I.

Because we review here the district court's granting of a motion to dismiss, we recite the facts as alleged in UCS's complaint, *McCloskey v. Mueller*, 446 F.3d 262, 264 (1st Cir.2006), but without crediting unsupported conclusions and assertions, *Palmer v. Champion Mortgage*, 465 F.3d 24, 25 (1st Cir.2006).

Universal Communication Systems, Inc. is a Nevada corporation with its corporate offices in Florida. The company at one point provided telecommunications services and currently is developing solar-powered water extraction systems. It is a publicly-traded company that trades under the ticker symbol "UCSY," a label that the company also uses in its promotional materials. Zwebner is Chairman and CEO of the company. He is a citizen of the United Kingdom and of Israel, with his principal residence in Israel and a secondary residence in Florida.

Lycos is a Massachusetts corporation with its principal place of business in Massachusetts. Terra Networks is a Spanish corporation with its principal place of business in Spain. Terra Networks owned Lycos from 2000 to 2004.

Lycos operates a network of web sites devoted to a wide array of content. At times relevant here, these web sites included Quote.com, which provides stock quotation information and financial data for publicly-traded companies, and RagingBull.com, which hosts financially-oriented message boards, including ones designed to allow users to post comments about publicly-traded companies. The message board for each such company is generally created by a user and is generally identified using the company's stock ticker symbol—UCSY in this case. In addition, the two web sites are linked to each other, so that a user who retrieves a stock quote from Quote.com is also given a

link to the corresponding message board on Raging Bull. Both web sites contain advertisements, and Lycos derives advertising revenue that depends in some measure on the volume of usage of its sites.

Individuals must register with Lycos in order to post messages on Raging Bull message boards. As part of the registration process, users are required to agree to a "Subscriber Agreement," which, inter alia, requires users to comply with federal and state securities laws. Upon registration, a member obtains a "screen name." Postings on the message board are identified by screen name, but no further identifying information is automatically included with the posting. The registration process does not prevent a single individual from registering under multiple screen names.

Starting at least in 2003, a number of postings disparaging the "financial condition, business prospects and management integrity" of UCS appeared on Raging Bull's UCSY message board. UCS alleges that these postings were "false, misleading and/or incomplete." In particular, UCS identified postings made under eight different screen names as objectionable. UCS alleges that the individuals registered under each of these screen names "are one [and] the same individual, Roberto Villasenor, Jr. and/or are individuals acting in concert with Roberto Villasenor, Jr."

On January 19, 2005, UCS filed suit against Lycos and Terra Networks in federal district court in the Southern District of Florida. On February 2, 2005, before either defendant responded to the complaint, UCS filed a "First Amended Complaint," adding as defendants eight John Does, each identified by a Raging Bull screen name. In this First Amended Complaint, UCS alleged four claims: (1) fraudulent securities transactions under Fla. Stat. § 517.301; (2) cyberstalking under 47 U.S.C. § 223; (3) dilution of trade name under Fla. Stat. § 495.151; and (4)

cyberstalking under Fla. Stat. § 784.048. The Florida securities claim was made against all of the defendants, and the remaining claims were made against Lycos and Terra Networks only.

In response, Lycos filed a motion to dismiss, arguing that UCS's claims were barred under Section 230 of the Communications Decency Act, 47 U.S.C. § 230, and that there was no basis for either the federal cyberstalking claim or the state dilution claim. Section 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," *id.* § 230(c)(1), and that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section," *id.* § 230(e)(3).

In the alternative, Lycos moved to transfer the case to the District of Massachusetts, citing a forum selection clause in its Subscriber Agreement. In addition, Lycos sought a stay of discovery pending the resolution of these motions. The district court in Florida granted the stay and shortly thereafter transferred the case to Massachusetts. This left pending the motion to dismiss.

Following the transfer, the district court in Massachusetts held a hearing on July 26, 2005, at which it denied all pending motions without prejudice. It then scheduled a later conference at which to consider any renewed motions, and held that it would "not lift the stay on discovery at this time." In response to UCS's request for limited discovery in the interim, the district court judge stated that he would "not allow that until I've had an opportunity to hear you on the matter. That will be an issue that we will take up at the [later] conference."

Lycos and Terra Networks again filed motions to dismiss, and on October 11, 2005, the district court granted the motions. The court ruled from the bench that Section 230 "immunizes Lycos [and Terra Networks] from all of the four counts in the plaintiffs' complaint" and did not address any of the alternate arguments for dismissal. At that hearing, UCS made no mention of any need for discovery in order to properly oppose the motions to dismiss.

UCS then moved for leave to amend its complaint again. In the proposed second amended complaint, UCS alleged essentially the same four causes of action, but added factual allegations going to the "construct and operation" of Lycos's web sites, evidently assuming that such facts would take Lycos outside Section 230 immunity.

On December 21, 2005, the district court denied the motion to amend the complaint as to Lycos and Terra Networks, finding that the claims against those defendants, as framed in the proposed second amended complaint, would continue to be barred by Section 230. In addition, the district court held that the claim for cyberstalking under 47 U.S.C. § 223 would be dismissed for failure to state a claim, because that statute does not provide a private right of action. As to the Florida trademark dilution claim, the court held that because Lycos was not using "the 'UCSY' trademark to market incompatible products or services," but was only using it "on the Raging Bull message board," the claim was "effectively . . . a defamation claim in the guise of an antidilution claim," and was thus barred by Section 230.

The district court did, however, grant leave to file a complaint against the John Doe defendants to assert a claim under the Florida securities statute. On February 27, 2006, UCS filed a "Second Amended Complaint" against Villasenor and the John Does. In this complaint, UCS substituted Roberto Villasenor, Jr. for two of the John Does, previously identified as "the-worm06" and "the-worm06A."[1] The complaint alleged that Villasenor was a citizen of California. In addition to asserting a cause of action under Florida securities laws against Villasenor and the remaining John Does, the complaint alleged causes of action, founded on the same set of operative facts, under federal securities laws, Massachusetts securities laws, and Massachusetts common law fraud. Subject matter jurisdiction was alleged based on both federal question jurisdiction and diversity jurisdiction. UCS then moved for entry of separate and final judgment against Lycos and Terra Networks. On April 6, 2006, Villasenor filed an answer to the complaint, also asserting counterclaims and third-party claims.

On April 18, 2006, the district court denied the motion for entry of separate and final judgment as to Lycos and Terra Networks, finding that the court lacked subject matter jurisdiction over the remaining claims and so judgment should be entered on all claims filed against all defendants. The court found that diversity jurisdiction was destroyed by the presence of the John Doe defendants. The court also found that the claim under the federal securities laws against Villasenor and the John Does was not sufficiently substantial to confer federal question jurisdiction, as UCS had failed to "allege that any individual defendant owned, borrowed, sold, or purchased any shares in UCSY." As a result, the district court ordered the case "dismissed as to all defendants."

---

**1.** Despite UCS's suggestion to the contrary, the complaint squarely alleged that the John Does might not all be Villasenor, but might be "individuals acting in concert with" Villasenor.

## II.

We review a denial of leave to amend the complaint for abuse of discretion, "deferring to the district court for any adequate reason apparent from the record." *Resolution Trust Corp. v. Gold*, 30 F.3d 251, 253 (1st Cir.1994). The futility of the amendment is an adequate reason to reject it, *see id.*, and here the district court found that the amendment would be futile because the amended complaint would be subject to dismissal. Our review of a dismissal for either failure to state a claim or lack of subject matter jurisdiction (so long as made without factfinding) is de novo. *McCloskey*, 446 F.3d at 266. We are not limited by the district court's reasoning, and we "may affirm an order of dismissal on any basis made apparent by the record." *Id.*

We begin with the Florida law claims against Lycos and Terra Networks.[2] Because these claims are based, at least in part, on the alleged impropriety of postings made by third parties on Raging Bull, UCS must contend with the statutory immunity provided by Section 230. UCS has attempted to plead around that immunity by casting its claims only in terms of Lycos's actions and by asserting causes of action that purportedly fall into one of the statutory exceptions to Section 230 immunity. Whatever the viability of UCS's legal theories in the abstract, however, the facts pleaded simply do not fit those theories. On the facts alleged, Congress intended that, within broad limits, message board operators would not be held responsible for the postings made by others on that board. No amount of artful pleading can avoid that result.

### A. *Applicability of CDA Section 230 Immunity*

Section 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," 47 U.S.C. § 230(c)(1), and that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section," *id.* § 230(e)(3). Thus, unless an exception applies, Lycos is immunized from a state law claim if: (1) Lycos is a "provider or user of an interactive computer service"; (2) the claim is based on "information provided by another information content provider"; and (3) the claim would treat Lycos "as the publisher or speaker" of that information.

Although this court has not previously interpreted CDA Section 230, we do not write on a blank slate. The other courts that have addressed these issues have generally interpreted Section 230 immunity broadly, so as to effectuate Congress's "policy choice . . . not to deter harmful online speech through the . . . route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330–31 (4th Cir.1997); *see also Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123–24 (9th Cir.2003); *Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 985 n. 3 (10th Cir.2000). In *Zeran*, the Fourth Circuit noted the "obvious chilling effect"

2. Both before the district court and in this court, Terra Networks has argued that, in addition to the bases for dismissal applicable to Lycos, the claims against it should be dismissed for lack of personal jurisdiction. Because we find that all claims against both Lycos and Terra Networks were properly dismissed for failure to state a claim, we need not reach this alternative argument. In the remainder of this opinion, we refer only to claims against Lycos, but the disposition of the claims against Terra Networks is the same.

that such intermediary tort liability could have, given the volume of material communicated through such intermediaries, the difficulty of separating lawful from unlawful speech, and the relative lack of incentives to protect lawful speech. 129 F.3d at 331. The Fourth Circuit also recognized the congressional purpose of removing the disincentives to self-regulation that would otherwise result if liability were imposed on intermediaries that took an active role in screening content. *Id.*

In light of these policy concerns, we too find that Section 230 immunity should be broadly construed. In the context of this case, we have no trouble finding that Lycos's conduct in operating the Raging Bull web site fits comfortably within the immunity intended by Congress. In particular: (1) web site operators, such as Lycos, are "provider[s] ... of an interactive computer service"; (2) message board postings do not cease to be "information provided by another information content provider" merely because the "construct and operation" of the web site might have some influence on the content of the postings; and (3) immunity extends beyond publisher liability in defamation law to cover any claim that would treat Lycos "as the publisher."

### 1. *"Interactive Computer Service" Provider*

There is no merit to UCS's suggestion that Lycos might not be a provider of an interactive computer service and so is not entitled to Section 230 immunity. The statute defines "interactive computer service" to be "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet." 47 U.S.C. § 230(f)(2). A web site, such as the Raging Bull site, "enables computer access by multiple users to a computer

server," namely, the server that hosts the web site. Therefore, web site operators, such as Lycos, are providers of interactive computer services within the meaning of Section 230.

UCS argues that Lycos might not be such a provider because it "does not provide user access to the internet." Providing access to the Internet is, however, not the only way to be an interactive computer service provider. While such providers are "specifically" included, there is no indication that the definition should be so limited. Other courts have reached the same conclusion. *See, e.g., Carafano,* 339 F.3d at 1123.

### 2. *"Information Provided By Another"*

The message board postings to which UCS objects are, on their face, "information provided by another information content provider." Section 230 defines "information content provider" to be "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). This is a broad definition, covering even those who are responsible for the development of content only "in part." In this case, it is clear that the individual posters on the Raging Bull web site are information content providers.

A key limitation in Section 230, however, is that immunity only applies when the information that forms the basis for the state law claim has been provided by *"another* information content provider." *Id.* § 230(c)(1) (emphasis added). Thus, an interactive computer service provider remains liable for its own speech. *See Anthony v. Yahoo! Inc.,* 421 F.Supp.2d 1257, 1262–63 (N.D.Cal.2006) (finding an online

dating service not immune under Section 230 from claims that it "manufactured false profiles" and "sent profiles of actual, legitimate former subscribers whose subscriptions had expired" (internal quotation marks omitted)).

■ It is, by now, well established that notice of the unlawful nature of the information provided is not enough to make it the service provider's own speech. *See Zeran,* 129 F.3d at 332–33; *see also Barrett v. Rosenthal,* 40 Cal.4th 33, 51 Cal. Rptr.3d 55, 146 P.3d 510, 514, 525 (2006). We confirm that view and join the other courts that have held that Section 230 immunity applies even after notice of the potentially unlawful nature of the third-party content.

UCS "emphasize[s]" that Lycos was "manifestly aware of the illegal nature of [the] subscriber postings," but does not rely on notice alone in arguing against immunity. UCS argues instead that Lycos "has involved itself with its subscriber[s'] conduct/activities and/or rendered culpable assistance to its registered subscribers to the Lycos Network, through the construct and operation of its web site," and that such conduct falls outside Section 230 immunity. UCS has alleged nothing, however, that suggests that Lycos should be considered to have been "responsible," even "in part," "for the creation or development" of the alleged misinformation. At best, UCS's allegations establish that Lycos's conduct may have made it marginally easier for others to develop and disseminate misinformation. That is not enough to overcome Section 230 immunity.

In *Carafano,* the Ninth Circuit rejected the plaintiff's suggestion that an online dating service should have been considered a developer of a false profile because it provided the questionnaire that a user of the service answered falsely. 339 F.3d at 1124–25. The court reasoned that the "underlying misinformation" that formed the basis for the complaint was contained entirely in the responses provided by the user, and that the particularly objectionable content "bore [no] more than a tenuous relationship to the actual questions asked." *Id.* at 1125.

Compared to *Carafano,* the allegations in this case provide an even less substantial basis to find that Lycos was a developer of the alleged misinformation. UCS points to the fact that Lycos does not prevent a single individual from registering under multiple screen names, and to the fact that Lycos links sites providing objective financial information to the Raging Bull site. UCS's theory is that these features of the Raging Bull site make it possible for individuals to spread misinformation more credibly, by doing so under multiple screen names and in a context that is associated with objective content. In *Carafano,* the plaintiff at least had a colorable argument that the misinformation may have been prompted by the dating service's questions. Here there is not even a colorable argument that any misinformation was prompted by Lycos's registration process or its link structure. There is no indication that the Lycos features that UCS criticizes are anything but standard for message boards and other web sites. To impose liability here would contravene Congress's intent and eviscerate Section 230 immunity.

In a related argument, UCS argues that Lycos has provided "culpable assistance" to subscribers wishing to disseminate misinformation, and hence Lycos exceeded the bounds of Section 230 immunity. UCS draws an analogy to the copyright case of *MGM Studios, Inc. v. Grokster, Ltd.,* 545 U.S. 913, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005). In *Grokster,* the Supreme Court held that copyright liability could be premised on a theory of active inducement of infringement, so that "one who distributes a device with the object of promoting its

use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." *Id.* at 2770. UCS argues that, similarly, Lycos should enjoy no immunity if it actively induces its subscribers to post unlawful content.

It is not at all clear that there is a culpable assistance exception to Section 230 immunity. The language of "culpable assistance" used by UCS appears to have been drawn from *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir.2003). But that court used the language in the context of determining whether the defendant might be secondarily liable under the Electronic Communications Privacy Act of 1986 (ECPA), Pub.L. No. 99–508, 100 Stat. 1848 (codified as amended in scattered sections of 18 U.S.C.). We note that liability under the ECPA is specifically exempted from Section 230 immunity. *See* 47 U.S.C. § 230(e)(4). There is no ECPA claim here. Similarly, *Grokster* itself was a copyright case, and secondary liability for copyright infringement is not affected by Section 230 because intellectual property laws are also exempted. *See id.* § 230(e)(2).

We need not decide whether a claim premised on active inducement might be consistent with Section 230 in the absence of a specific exception. Even assuming arguendo that active inducement could negate Section 230 immunity, it is clear that UCS has not alleged any acts by Lycos that come even close to constituting the "clear expression or other affirmative

steps taken to foster" unlawful activity that would be necessary to find active inducement. *See Grokster*, 125 S.Ct. at 2770. UCS relies in part on Lycos's registration process and link structure; as described above, these are standard elements of web sites "with [both] lawful and unlawful potential," *see id.* at 2780, and hence, without more, cannot form the basis to find inducement. UCS's complaint also cites the fact that Lycos has taken legal action to protect its subscribers, including moving to quash subpoenas and intervening in relevant cases. Actions taken to protect subscribers' legal rights, however, cannot be construed as inducement of unlawful activity, and UCS does not allege that Lycos lacked a reasonable basis for its legal activities. *Cf. Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 51, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) ("[L]itigation cannot be deprived of [antitrust] immunity as a sham unless the litigation is objectively baseless."). The "unmistakable" evidence of an "unlawful objective" found in *Grokster*, 125 S.Ct. at 2782, is entirely absent here.[3]

Thus, it is clear that, taking UCS's allegations as true, Lycos has done nothing in this case that might make the misinformation at issue its own, rather than that of "another information content provider."

### 3. Treatment "as the Publisher"

■ Finally, liability under either the Florida securities law or the Florida cyberstalking law would involve treating Lycos "as the publisher" of the misinformation.[4] UCS's securities claims are based

3. UCS also argues that because it bases its claims on Lycos's alleged "intentional misconduct," those claims are not subject to Section 230 immunity. It is not clear how UCS is using the phrase "intentional misconduct." If this refers to Lycos's acting intentionally with knowledge of the third-party misinformation, then such claims are barred under our holding that notice does not preclude

Section 230 immunity. If this refers to Lycos's acting with intent to harm UCS, then this is a variant on an active inducement theory, which, as we have described, has no basis in UCS's factual allegations.

4. On the federal cyberstalking claim under 47 U.S.C. § 223, in addition to finding the claim barred by Section 230, the district court also

on the theory that individuals were taking a short position in UCS stock and then spreading misinformation to depress the stock price, so as to profit from their short position.[5] There is no allegation that Lycos has been involved in any UCS stock transactions; thus, any liability against it must be premised on imputing to it the alleged misinformation, that is, on treating it as the publisher of that information.[6] Similarly, the alleged cyberstalking involves only the publication of a series of postings on the Raging Bull web site. Again, Lycos's liability would depend on treating it as the publisher of those postings.

UCS argues that the prohibition against treating Lycos "as the publisher" only immunizes Lycos's "exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content," *Zeran*, 129 F.3d at 330, and not its decisions regarding the "construct and operation" of its web sites. This argument misapprehends the scope of Section 230 immunity. If the cause of action is one that would treat the service provider as the publisher of a particular posting, immunity applies not only for the service provider's decisions with respect to that posting, but also for its inherent decisions about how to treat postings generally. UCS is ultimately alleging that the construct and operation of Lycos's web sites contributed to the proliferation of misinformation; Lycos's decision not to reduce misinformation by changing its web site policies was as much an editorial decision with respect to that misinformation as a decision not to delete a particular posting. Section 230 immunity does not depend on the form that decision takes. *See Green v. Am. Online (AOL)*, 318 F.3d 465, 470 (3d Cir.2003) (finding that liability for the "alleged negligent failure to properly police [AOL's] network for content transmitted by its users ... would 'treat' AOL 'as the publisher or speaker' of that content").

We hold that, given the allegations in UCS's complaint, liability for Lycos under either the Florida securities statute or the Florida cyberstalking statute would involve treating Lycos "as the publisher" of "information provided by another information content provider." Thus, we affirm the district court's ruling that both claims are barred by Section 230.

## B. *Trademark Dilution*

■ UCS's remaining claim against Lycos was brought under Florida trademark law, alleging dilution of the "UCSY" trade name under Fla. Stat. § 495.151. Claims based on intellectual property laws are not

---

found that the cyberstalking statute does not provide a private right of action. UCS does not challenge this dispositive ruling on appeal, so we affirm the dismissal of the claim on that basis, expressing no view on the appropriateness of applying Section 230 immunity to a putative civil claim under 47 U.S.C. § 223. *See* 47 U.S.C. § 230(e)(1) ("Nothing in this section shall be construed to impair the enforcement of section 223 or 231 of this [title 47], ... or any other Federal *criminal* statute." (emphasis added)).

Nor do we express a view on whether the specific exception in § 230(e)(1) for federal criminal statutes might apply to analogous state statutes. UCS's brief might be read to suggest something along these lines, but "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).

5. To take a short position in a stock means to sell borrowed stock at the current price in the hope that the stock price will decline and the borrower will be able to return the borrowed stock by purchasing it at the later, lower price.

6. We express no view on the viability of such a claim, absent Section 230 immunity.

subject to Section 230 immunity. *See* 47 U.S.C. § 230(e)(2) ("Nothing in this section shall be construed to limit or expand any law pertaining to intellectual property."); *see also Gucci Am., Inc. v. Hall & Assocs.*, 135 F.Supp.2d 409, 413 (S.D.N.Y.2001) (finding that the "plain language of Section 230(e)(2) precludes [the defendant's] claim of immunity" from a claim for trademark infringement).

■ Thus, "the pivotal issue for consideration here is whether Plaintiff's complaint would withstand a motion to dismiss even in the absence of § 230." *Id.* at 412. We hold that, because of the serious First Amendment issues that would be raised by allowing UCS's claim here, the claim would not survive, even in the absence of Section 230.[7]

During the relevant time period, Fla. Stat. § 495.151 (2006) provided that one who adopts and uses a trademark or trade name has a cause of action

> to enjoin subsequent use by another of the same or any similar mark [or] trade name ... if it appears to the court that there exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the mark [or] trade name ... of the prior user, notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services.[8]

UCS's theory is that Lycos is liable under this statute for suggesting to its subscribers that they use the " 'UCSY' mark for designation of a message board on the Raging Bull web site" and then "contri-

but[ing] to the development" of misinformation on that message board and failing to remove such misinformation. UCS alleges that these acts have caused injury to its business reputation and dilution of its UCSY trade name.

■ The injury that UCS alleges, however, is not a form of trademark injury. Trademark injury arises from an improper association between the mark and products or services marketed by others. *See L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 31 (1st Cir.1987). But any injury to UCS ultimately arises from its being criticized on the Raging Bull site. To premise liability on such criticism would raise serious First Amendment concerns. *See id.* at 33. In *L.L. Bean*, this court held that the "application of the Maine anti-dilution statute to [defendant's] non-commercial parody cannot withstand constitutional scrutiny" under the First Amendment, recognizing the role of parody "as a form of social and literary criticism." *Id.* (quoting *Berlin v. E.C. Publ'ns, Inc.*, 329 F.2d 541, 545 (2d Cir.1964)) (internal quotation marks omitted). In that case, as in this one, "[i]f the anti-dilution statute were construed as permitting a trademark owner to enjoin the use of his mark in a noncommercial context found to be negative or offensive, then a corporation could shield itself from criticism by forbidding the use of its name in commentaries critical of its conduct." *Id.*

To be sure, UCS does allege that in this case the criticism is false and misleading.

---

7. After noting the same First Amendment concerns, the district court held that UCS's trademark claim was "effectively ... a defamation claim in the guise of an antidilution claim," and that "Lycos and Terra would therefore be shielded from [the claim] by CDA immunity." We reason somewhat differently, holding that even though Section 230 immunity does not apply, the claim was properly dismissed as a matter of trademark law.

8. The statute has since been amended, effective January 1, 2007, and now applies only to "a mark that is famous in this state." Fla. Stat. § 495.151 (2007). The new statute contains an explicit exception for "[n]oncommercial use of the mark." *Id.* § 495.151(3)(b). Our discussion below would apply equally to the new statute.

But while such an allegation might be relevant to a defamation claim, it is not determinative of whether UCS's allegations can support a trademark claim. If the injury alleged is one of critical commentary, it falls outside trademark law, whether the criticism is warranted or unwarranted. UCS itself makes no distinction between lawful and unlawful criticism in its proposed remedy under trademark law: it requests an injunction that would require Lycos to "permanently and irrevocably delete the UCSY message board" and refrain "from creat[ing] and maintaining . . . a UCSY message board . . . in the future."

UCS tries to avoid the thrust of cases like *L.L. Bean* by characterizing Lycos's use of the UCSY trade name as "commercial." It certainly appears from the complaint that Lycos derives advertising revenues from the use of its web sites, including Raging Bull, and that Lycos is a commercial venture. This does not imply, however, that Lycos's use of the UCSY trade name is "commercial" in the relevant sense under trademark law. In *L.L. Bean*, the defendant had used the plaintiff's trademark in a parody article published in a "monthly periodical." 811 F.2d at 27. We found the use noncommercial because the mark had not been used "to identify or promote goods or services to consumers," *id.* at 32, regardless of whether the article appeared in a magazine being sold for profit. Similarly, courts have interpreted the "noncommercial use" exemption in the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c), to apply to commentary about trademarked products, even if that commentary takes the form of a commercial product, such as a widely-marketed song. *See Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 899, 907 (9th Cir.2002). Thus, Lycos might profit by encouraging others to talk about UCS under the UCSY name, but neither that speech nor Lycos's providing a fo-

rum for that speech is the type of use that is subject to trademark liability.

Other courts have dealt with similar issues under the rubric of a "nominative fair use defense." *New Kids on the Block v. News·Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir.1992). Unlike a classic fair use defense, "where the defendant has used the plaintiff's mark to describe the defendant's *own* product," a nominative fair use defense is designed to protect the ability of others to use a mark "to describe the plaintiff's product." *Id.* Thus, the Ninth Circuit found that a newspaper's use of a musical group's trademarked name to conduct a poll about the group was a nominative fair use, even though the poll was conducted for profit. *See id.* at 309.

This court has not previously decided whether to endorse the Ninth Circuit's test for nominative fair uses, and we have no occasion to do so here. We have, however, recognized the underlying principle. In *WCVB-TV v. Boston Athletic Ass'n*, 926 F.2d 42 (1st Cir.1991), the owner of the mark "Boston Marathon" tried to enjoin the use of the mark on an unlicensed broadcast of the marathon. *Id.* at 44. In rejecting a right to such an injunction, we noted

> [T]he words "Boston Marathon" . . . do more than call attention to Channel 5's program; they also *describe* the event that Channel 5 will broadcast. . . . [T]he use of words for descriptive purposes is called a "fair use," and the law usually permits it even if the words themselves also constitute a trademark.

*Id.* at 46. The unlicensed broadcaster, Channel 5, was not asserting a right to use the mark for a different marathon located in Boston; it was using the mark to indicate that it was broadcasting *the* "Boston Marathon." We held that it had the right to use the mark to indicate what it was in fact broadcasting. Similarly here, trade-

mark law should not prevent Lycos from using the "UCSY" mark to indicate that a particular company is the subject of a particular message board.

■ While Florida courts do not appear to have addressed this particular issue with respect to the Florida anti-dilution statute, there is every indication that the Florida courts would read the Florida statute to exclude the uses made in this case. Despite its broad language, "the Florida antidilution statute is not intended to apply to the use of a similar mark on similar goods," but rather only to the use of "similar marks on *dissimilar* products." *Harley–Davidson Motor Co. v. Iron Eagle of Cent. Fla., Inc.*, 973 F.Supp. 1421, 1426 (M.D.Fla.1997). Lycos is not using the "UCSY" trade name "on" a product (or business) at all, but is simply referring to the existing company that has adopted that trade name.

■ It is not our role to define the specific contours of the Florida anti-dilution law, and we do not do so here. As other courts have also found, however, anti-dilution laws should be interpreted to provide breathing room for First Amendment concerns. *See MCA Records*, 296 F.3d at 904. Whether Lycos's use of the "UCSY" trade name is viewed as a non-commercial use, as a nominative use, or in some other way, we hold that using a company's trade name to label a message board on which the company is discussed is not a use covered by the Florida anti-dilution statute. As a result, we affirm the district court's dismissal of UCS's dilution claim for failure to state a claim.

## C. *Discovery*

UCS argues that its claims against Lycos would not have fared so poorly had the

district court given it the opportunity to conduct preliminary discovery. We review this claim for an abuse of the district court's broad discretion in managing discovery, and we will not "interfere unless it clearly appears that a 'discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party.' " *Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 38 (1st Cir.2000) (quoting *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 186 (1st Cir.1989)).

At the outset, UCS may well have forfeited this point by failing to explain to the district court its need for discovery either in its opposition to the motions to dismiss or at the October 11, 2005 hearing on those motions. *See id.* UCS argues that the need for discovery was apparent from its request at the July 26, 2005 hearing, together with the nature of the arguments made at the October 11 hearing, but it was not the district court's job to infer an explanation from these scattered statements.

In any event, it is clear that even before this court, UCS has not pointed to any discovery that would support a viable claim against Lycos that falls outside of Section 230 immunity.[9] *Cf. id.* at 39. UCS focuses on discovery concerning the "construct and operation" of Lycos's web sites, but as we have explained above, Lycos is as entitled to immunity for its decisions about how to construct its web sites as for its decisions with respect to individual message board postings. Any suggestion that Lycos may have done more specifically to encourage the postings at issue is sheer speculation. "[P]laintiffs should not be permitted to conduct fishing expeditions in hopes of discovering claims that they do

---

**9.** UCS does argue that discovery as to the identity (and citizenship) of the persons using particular screen names to post the allegedly unlawful comments would have allowed it to stave off the district court's jurisdictional dismissal. Since we affirm the dismissal on alternate grounds below, we need not address the propriety of such discovery.

not know they have." *McCloskey*, 446 F.3d at 271. The district court did not err in not permitting preliminary discovery.

## III.

■ The remaining issue concerns UCS's claims against the individual posters: Villasenor and six John Does. The district court found that it lacked subject matter jurisdiction over these claims because the putative federal claim was insubstantial, and because the presence of John Does destroyed diversity jurisdiction.[10] We bypass the jurisdictional issues raised and hold, on similar reasoning, that UCS's allegations are insufficient to plead a claim for securities fraud.[11]

■ UCS's theory of securities fraud appears to be, as we have described, that Villasenor and the John Does first took short positions in UCS stock and then spread misinformation to depress the stock price. *Cf. SEC v. Mandaci*, No. 00 Civ. 6635, 2004 WL 2153879, at *1, 2004 U.S. Dist. LEXIS 19143, at *1 (S.D.N.Y. Sept. 27, 2004) (describing scheme to "purchase[ ] certain stocks and then ... artificially inflate the market prices of those stocks by posting false information ... on Internet message boards"). However, UCS does not sufficiently allege such a scheme. UCS's Second Amended Complaint contains copious allegations regarding the postings on Raging Bull, but as to a short-selling scheme, only a single allegation that "[u]pon information and belief," the individual defendants "fraudulently manipulate[d] the market in the securities for publicly traded companies" using a short-selling scheme. Nowhere does the complaint specifically allege UCS stock transactions by the defendants.

Such a conclusory allegation of securities fraud runs afoul of the requirement of Federal Rule of Civil Procedure 9(b) to plead "the circumstances constituting fraud ... with particularity."[12] Not only has UCS failed to specifically allege a con-

10. The presence of John Does does not destroy diversity jurisdiction in cases removed to federal court. *See* 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."); *see also Howell v. Tribune Entm't Co.*, 106 F.3d 215, 218 (7th Cir.1997). Federal courts do not agree on whether John Does are permitted in diversity cases originally filed in federal court, as this case was. *Compare Howell*, 106 F.3d at 218(no) *with Macheras v. Ctr. Art Galleries–Hawaii, Inc.*, 776 F.Supp. 1436, 1440 (D.Haw.1991) (yes). The First Circuit has never directly addressed this issue, nor do we do so here. *See McMann v. Doe*, 460 F.Supp.2d 259, 264 (D.Mass.2006).

11. The Supreme Court has held that courts must resolve issues of Article III jurisdiction before reaching questions on the merits, even if "(1) the merits question is more readily resolved, and (2) the prevailing party on the merits would be the same as the prevailing party were jurisdiction denied." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). However, the rule is well established in this circuit that "while Article III jurisdictional disputes are subject to *Steel Co.*, statutory jurisdictional disputes are not." *Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd.*, 325 F.3d 54, 59 (1st Cir.2003). Article III requires only "minimal diversity" for jurisdiction based on diversity of citizenship, that is, "two adverse parties [who] are not co-citizens." *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530–31, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967). In this case, Villasenor, a citizen of California, is diverse from Universal Communication Systems, a Nevada corporation with its principal place of business in Florida. Thus, the district court did have Article III jurisdiction over the claims in the Second Amended Complaint filed by UCS.

12. To the extent applicable, the pleadings also fall short of the standard required by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4, which we have held to embody "at least the standards of Rule 9(b)." *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193 (1st Cir.1999).

nection between the postings and a scheme involving UCS stock, the sole allegation of a short-selling scheme is made on information and belief. "Where allegations of fraud are explicitly or . . . implicitly based only on information and belief, the complaint must set forth the source of the information and the reasons for the belief." *Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 878 (1st Cir.1991). UCS has not done so here. UCS does not purport to state a claim for securities fraud based solely on negative effects that the Raging Bull postings had on the company's stock price; in the absence of further factual allegations, it cannot proceed merely on the hope that it will find more. *See Hayduk v. Lanna,* 775 F.2d 441, 443 (1st Cir. 1985).

Finally, these pleading defects are also fatal to UCS's claims under state law based on the same allegations. "Although state law governs the burden of proving fraud at trial, the procedure for pleading fraud in federal courts in all diversity suits is governed by the special pleading requirements of Federal Rule of Civil Procedure 9(b)." *Id.*

### IV.

Therefore, while some of UCS's claims are barred by Section 230 immunity, the remaining ones simply do not state a claim based on the facts alleged. If UCS has in fact been injured, redress is not available through any of the avenues it has chosen to pursue in this case. The district court's dismissal of all claims is *affirmed.* Costs are awarded to appellees.